UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          v.<br><br>VALENTIN MARTINEZ, a/k/a Valentin Rivera, a/k/a Vale, a/k/a V., ET AL,<br>      Defendant, | CRIMINAL ACTION<br>NO. 04-1685-CBS |

**MEMORANDUM OF PROBABLE CAUSE AND
ORDER OF DETENTION**
August 4, 2004

**SWARTWOOD, M.J.**

    I.   Nature of the Offense and the Government's Motion

On February 26, 2004, a Criminal Complaint was filed, charging Valentin Martinez, a/k/a Valentin Rivera, a/k/a Vale, a/k/a V. ("Valentin Martinez"), and others, with conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §846.

At his initial appearance on May 3, 2004, Valentin Martinez was advised of his right to a preliminary examination in accordance with Fed. R. Crim. P. 5.1 and the Government moved for a detention hearing in accordance with 18 U.S.C. §§3142(f)(1)(B)(the offense charged provides for a maximum penalty of life imprisonment),(f)(1)(C)(Defendant is charged with an offense for

which a maximum term of imprisonment of ten years or more is prescribed in the "Controlled Substances Act"), and (f)(2)(A)(risk of flight).

After several continuances requested by Valentin Martinez, a consolidated probable cause/detention hearing was held on July 15, 2004. Following conclusion of the Government's evidence, Valentin Martinez requested and was granted a continuance to August 2, 2004. On August 2, 2004, the probable cause/detention hearing was concluded as to Valentin Martinez[1].

At the hearing on July 15, 2004, Jean Drouin, Special Agent with the Drug Enforcement Administration ("DEA"), testified on behalf of the Government and was cross-examined by Valentin Martinez's counsel.

## II.  Findings of Fact

1.  Special Agent Drouin is the case agent in connection with an investigation concerning the distribution of multiple kilograms of cocaine in the North Shore area of Massachusetts. This investigation commenced in January 2003 and concluded on May 1, 2004 with the arrest of more than twenty defendants. During this investigation, Special Agent Drouin and other law enforcement officials involved in this investigation, used informants,

---

[1] On July 15, 2004, after several continuances at his request, a consolidated probable cause/detention hearing was also commenced as to Kelvin Madera, a/k/a Manololnu, a/k/a Manuel Germosen ("Mr. Madera"). At the conclusion of the Government's evidence, Mr. Madera also requested a continuance until August 2, 2004. On August 2, 2004, Mr. Madera requested a futher continuance until August 30, 2004.

undercover agents, global positioning systems ("GPS") on four automobiles, surveillance of individuals and locations, Department of Motor Vehicles photographs for identification of individuals involved in this investigation, recorded and monitored controlled purchases of cocaine and Title III wire intercepts on approximately twenty-one telephones.

2.   Primarily as a result of wire intercepts, law enforcement officials were alerted that a multi-kilogram load of cocaine was to be delivered in late April or early May 2004 to the organization which was the subject of this investigation.  Following up on these wire intercepts, law enforcement officials arrested over twenty defendants whom the Government alleges were involved in a conspiracy to distribute multiple kilograms of cocaine in the North Shore of Massachusetts.  As a result of these arrests, approximately 50 kilograms of cocaine and a substantial amount of cash were seized.

3.   During the period from August 1 to September 20, 2003, Valentin Martinez was intercepted on the telephone giving orders to Jose Rosales and Kelvin Madera in furtherance of this alleged cocaine conspiracy.  Sometime late in September or early October 2003, Valentin Martinez went to Mexico to care for his ailing mother and then returned to the North Shore of Massachusetts in February 2004.  While in Mexico, Valentin Martinez was intercepted telephoning Messrs. Rosales and Valentin Madera, instructing them on the delivery of drugs and collection of money.  Govt. Ex. 1.

4.   On September 3, 2003, as a result of wire intercepts, involving Messrs. Rosales, Valentin Martinez and Rogelio Garcia, Valentin Martinez was heard instructing Mr. Rosales to dilute a kilogram of cocaine to make two kilograms of cocaine.  Mr. Rosales agreed and called Mr. Garcia, who acknowledged that he had a kilogram of cocaine and that it could be diluted to make two kilograms of cocaine.  Valentin Martinez advised Mr. Rosales that once it was diluted to make sure to "let it dry".  Surveillance agents then saw Mr. Rosales go to Mr. Garcia's residence at 46 Wyman Street, Lynn, Massachusetts to meet with Mr. Garcia to dilute Mr. Garcia's one kilogram of cocaine into two kilograms of cocaine. Id.

### III.   Probable Cause

From the wire intercepts and surveillance of Valentin Martinez, I find that while he was in the North Shore area in the summer and fall of 2003 and even while he was in Mexico, he was performing a leadership role in this alleged cocaine conspiracy. Additionally, there was substantial evidence that Valentin Martinez ordered Mr. Rosales to dilute one kilogram of cocaine into two kilograms of cocaine for sale to a specific customer.  Therefore, I find that there is probable cause for the offense charged against Valentin Martinez in this Complaint.

### IV.   The Bail Reform Act

#### A.   Discussion of the Bail Reform Act

Under 18 U.S.C. § 3142 ("The Bail Reform Act" or "the Act"), the judicial officer shall order that, pending trial, the Defendant be (1) released on his own recognizance or upon execution of an unsecured bond; (2) released on a condition or combination of conditions; (3) temporarily detained to permit revocation of conditional release, deportation, or exclusion; or (4) detained. 18 U.S.C. § 3142(a). Under the Act, the judicial officer may detain a person pending trial only if, after a detention hearing held pursuant to 18 U.S.C. § 3142(f), the judicial officer determines that "no condition or combination of conditions [set forth under 18 U.S.C. § 3142 (b) or (c)] will reasonably assure the appearance of the person as required and the safety of any other person and the community". 18 U.S.C. § 3142(e). The Supreme Court, in United States v. Salerno, 481 U.S. 739, 747, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) has cautioned that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." Id. at 755, 107 S.Ct. at 2105. For this reason, the Defendant may be detained only if the judicial officer finds by (1) clear and convincing evidence, that the Defendant is a danger to the community, or (2) a preponderance of the evidence, that the Defendant poses a risk of flight. See 18 U.S.C. § 3142 (f); United States v. Jackson, 823 F.2d 4-5 (2d Cir. 1987); United States v. Berrios-Berrios, 791 F.2d 246, 250 (2d Cir. (1986), cert. denied, 479 U.S. 978, 107 S.Ct. 562, 93 L.Ed.2d 568 (1986). See also United States v. Patriarca, 948 F.2d 789, 792-93

5

(1st Cir. 1991). Furthermore, the judicial officer "may not impose financial condition that results in the pretrial detention of the person". 18 U.S.C. § 3142 (c).

The Bail Reform Act establishes a two step procedure for making the determination that the Defendant should be detained. First, the Government is entitled to move for detention where the Defendant has been charged with one of the offenses enumerated in the statute for which Congress has determined that detention is warranted. See 18 U.S.C. § 3142 (f)(1). The Government may also move for detention, or the judicial officer may on his or her own motion move for detention, where the case involves a serious risk that the Defendant will flee or that the Defendant will obstruct or attempt to obstruct justice. 18 U.S.C. § 3142(f)(2). Second, the judicial officer must determine whether any condition or combination of conditions will adequately ensure the appearance of the Defendant and the safety of the community against any danger posed by the Defendant's pretrial release. See United States v. Friedman, 837 F.2d 48, 49 (2d Cir. 1988).

In meeting its burden on the issue of whether any condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community, the Government is aided by the statutory presumptions created by 18 U.S.C. 3142(e). Where the offense charged is one of the offenses enumerated in Section 3142(f)(1), Section 3142(e) creates the rebuttable presumption that no condition or combination

of conditions will reasonably assure the safety of the community if the judicial officer finds that: (1) the Defendant has been convicted of a federal offense that is described in Section 3142(f) or an offense under state law that would have been an offense described in Section 3142(f)(1) if federal jurisdiction had existed, (2) such offense was committed while the person was on release pending trial for a federal, state or local offense, and (3) a period of not more than five years has elapsed since the date of conviction or release from imprisonment for such offense. Section 3142(e) also creates the rebuttable presumption that no condition or combination of conditions will ensure the safety of the community and the appearance of the Defendant if the judicial officer finds that there is probable cause to believe that the Defendant committed an offense: (1) for which a maximum term of imprisonment of ten years or more is prescribed (a) in the Controlled Substances Act, (b) the Controlled Substances Import and Export Act, or (c) the Maritime Drug Enforcement Act; or (2) under 18 U.S.C. § 924(c). In order to rebut either presumption, the Defendant must produce "some evidence" to the contrary. United States v. Jessup, 752 F.2d 378, 384 (1st Cir. 1985).

In making the determination as to whether "any condition or combination of conditions will reasonably assure the appearance of the [Defendant] as required and the safety of any other person and of the community", the judicial officer is compelled to consider the following factors:

    (1)    the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

    (2)    the weight of the evidence against the person;

    (3)    the history and characteristics of the person, including:

        a.    the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

        b.    whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

    (4)    the nature and seriousness of the danger to any other person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

    V.    <u>Discussion of Whether Detention is Warranted</u>

    A.    <u>Valentin Martinez's History and Characteristics</u>

Valentin Martinez was born in Mexico on December 20, 1969, where he remained until he illegally entered the United States in 1989. While in the United States, Valentin Martinez has lived primarily in Lynn, Massachusetts. While living in the United States, Valentin Martinez has returned to Mexico on several occasions. Most recently, in October 2003, Valentin Martinez traveled to Mexico to care for his ailing mother and returned to the Lynn area in February 2004. Before coming to the United

States, Valentin Martinez completed high school and two years in an accounting school in Mexico.

Prior to Valentin Martinez's arrest, he had resided with his long-term girlfriend, a naturalized citizen from the Dominican Republic, with whom he has two children: Valentina, age 7, and Valentino Jr., age 19 months. Valentin Martinez married a United States citizen in 1993, they lived together for approximately a year and were divorced in 1996. Valentin Martinez has other children living in the Dominican Republic, whom he visited in 2003.

Valentin Martinez's father is deceased and his mother resides in Mexico where one sister and three brothers also reside. One sister is a legal permanent resident of the United States and has resided in Lynn, Massachusetts for the past four years.

For the past four years, Valentin Martinez has been employed at Bob's Motor Sales and prior to that worked for an auto body shop in Salem, Massachusetts for two years.

Valentin Martinez has a cement block business in Mexico.

From 1990 to 1992, Valentin Martinez had numerous motor vehicle violations, but has no other criminal record.

C.  <u>Nature of the Offense and Weight of the Evidence</u>

I have previously found probable cause for the offense charged against Valentin Martinez in this Complaint. I find that Valentin Martinez was intercepted and recorded making arrangements for the sale of a substantial amount of cocaine and intercepted giving orders to other members of the alleged cocaine conspiracy to

collect money for drug sales. Therefore, I find that the weight of the evidence against Valentin Martinez is substantial.

### D.  Rebuttable Presumption

The United States has moved for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(B), (f)(1)(C), and (f)(2)(A). The Government must prove that there is no condition or combination of conditions that would reasonably assure the safety of any other person or the community if Valentin Martinez was released, or the appearance of Valentin Martinez as required.

The rebuttable presumption created by 18 U.S.C. § 3142(e) applies in this case, because Valentin Martinez is charged with a drug offense for which a maximum penalty of ten years or more is prescribed in the Controlled Substances Act. I have found probable cause exists for the offense charged against Valentin Martinez in the Complaint. Therefore, I find that under 18 U.S.C. §3142(e), there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of Valentin Martinez or the safety of the community if he were released. I further find that Valentin Martinez has not produced nor proffered any credible evidence on his own behalf to rebut this presumption. Without such evidence, the presumption alone may justify detention. United States v. Alatishe, 768 F.2d 364, 371 (D.C. Cir. 1985); United States v. Vires, 637 F. Supp. 1343, 1351 (W.D.Ky. 1986). Although I have determined that Valentin Martinez has failed to rebut the presumption, for the sake of completeness, I will examine

the Government's assertion that Valentin Martinez poses a danger to the community and a risk of flight.

   E. <u>Whether Valentin Martinez Poses A Danger to the Community</u>

     Valentin Martinez has been intercepted and recorded giving orders to other members of this alleged drug conspiracy for the sale and distribution of cocaine. Although Valentin Martinez was in Mexico from October 2003 to February 2004, he still maintained contact with his co-conspirators in the North Shore area of Massachusetts and during his absence from the area, gave orders to his lieutenants in this continuing enterprise. However, for all practical purposes, Valentin Martinez does not have a criminal record and no record of convictions for crimes of violence or prior drug dealing. Therefore, I am relying on the rebuttable presumption to detain Valentin Martinez on dangerousness grounds.

   F. <u>Whether Valentin Martinez Poses A Risk Of Flight</u>

    The most important and relevant fact in assessing whether Valentin Martinez poses a risk of flight is his status in this country. Valentin Martinez is an illegal alien and if he is convicted of the offense charged in this Complaint, he faces a substantial period of incarceration and certain deportation following that incarceration. Given these circumstances, Valentin Martinez has little or no incentive to remain in this country to face the charges pending against him. Valentin Martinez has a long-term girlfriend living in Lynn, Massachusetts with their two children. However, Valentin Martinez also has ties to several

different countries where he could flee to avoid prosecution. For example, Valentin Martinez has children living in the Dominican Republic, whom he visited in 2003. Additionally, Valentin Martinez has substantial ties to Mexico where his mother and three siblings reside and where he owns a business. The ease with which Valentin Martinez could return to Mexico is evidenced by the fact that he has made a number of recent trips to Mexico to be with his family. Therefore, considering the totality of these circumstances, I find by a preponderance of the evidence that there are no conditions or combination of conditions that I may impose that will assure Valentin Martinez's appearance in this Court as required.

### IV.   Order of Detention Pending Trial

In accordance with the foregoing memorandum,

IT IS ORDERED:

1. That Valentin Martinez be committed to the custody of the Attorney General or his designated representative, for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2. That Valentin Martinez be afforded a reasonable opportunity for private consultation with counsel; and

3. On order of a court of the United States or on request by an attorney for the Government, the person in charge of the corrections facility in which Valentin Martinez are detained and confined shall deliver Valentin Martinez to an authorized Deputy

United States Marshal for the purpose of any appearance in connection with a court proceeding.

### RIGHT OF APPEAL

THE PERSON OR PERSONS DETAINED BY THIS ORDER MAY FILE A MOTION FOR REVOCATION OR AMENDMENT OF THE ORDER PURSUANT TO 18 U.S.C. § 3145(b).

/s/Charles B. Swartwood, III
CHARLES B. SWARTWOOD, III
MAGISTRATE JUDGE